**FILED**
**CLERK**

2:02 pm, Sep 16, 2019

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
JAMES KALAMARAS,

      Plaintiff,

      -v-

COUNTY OF NASSAU,
MADELINE SINGAS, in her individual and
official capacities,
GEORGE SMIT, in his individual and
official capacities,
ANNE DONNELLY, in her individual and
official capacities,
DETECTIVE BRIAN KAMINSKI,
in his individual and official capacities,
DETECTIVE MATTHEW SCHILLER,
in his individual and official capacities,
JOHN DOE POLICE OFFICER #1,
in his individual and official capacities,
JOHN DOE POLICE OFFICER #2,
in his individual and official capacities,
JANE DOE POLICE OFFICER #1,
in her individual and official capacities,
NICHOLAS BAIALARDO,
JAMES M. CHMELA, and
JOSE SANTIAGO,

      Defendants.
----------------------------------------------------X

Case No. 17-cv-1068 (SFJ)(ARL)
**Memorandum and Order**

FEUERSTEIN, S., Senior District Judge:

I.    <u>Introduction</u>

      Plaintiff James Kalamaras ("Plaintiff" or "Kalamaras") commenced this civil rights

action pursuant to 42 U.S.C. §§ 1983, 1985 & 1986 against Defendants County of Nassau

("County"), Madeline Singas ("Singas"), in her individual and official capacities, George Smit

("Smit"), in his individual and official capacities, Anne Donnelly ("Donnelly"), in her individual

and official capacities (collectively with Singas and Smit, the "Prosecutors"), Detective Brian

Kaminski ("Kaminski"), in his individual and official capacities, Detective Matthew Schiller

1

("Schiller"), in his individual and official capacities (together with Kaminski, the "Detectives"), John Doe Police Officer #1 ("Officer 1"), in his individual and official capacities, John Doe Police Officer #2 ("Officer 2"), in his individual and official capacities, Jane Doe Police Officer #1 "(Officer 3"; collectively with Officers 1 & 2, the "Officers"), in her individual and official capacities, (with the County, Prosecutors, Detectives, and Officers, hereafter collectively the "County Defendants") [1], alleging various violations of his constitutional rights arising out of his arrest and prosecution on arson and burglary charges related to a February 25, 2015 fire at a commercial property located in Great Neck, New York. (*See generally* Complaint ("Complaint")(ECF No. 1).) Presently before the Court are: the County Defendants' motion seeking summary judgment in its favor on all of Plaintiff's claims (hereafter, the "Summary Judgment Motion") (*see* ECF No. 41; *see also* Mem. in Supp. ("Support Memo") (ECF No. 41-10)), which the Plaintiff opposes (hereafter, "Opposition" or "Opp'n")(ECF No. 41-16); and, the Plaintiff's cross-motion to strike the County Defendants' Answer (hereafter, the "Strike Motion") (*see* ECF. 29 at 1-2; *see also* Opp'n), which the County Defendants oppose (*see* ECF

---

[1] Plaintiffs also named Nicholas Baialardo ("Baialardo"), James M. Chmela ("Chmela"), and Jose Santiago ("Santiago"; collectively with Baialardo and Chmela, the "Non-County Defendants") as defendants in this action. (*See* Complaint (ECF No. 1) at ¶¶11-13; *see also* "Rider to Summons" (ECF No. 6 at 3); "Rider #2 to Summons" (ECF No. 6 at 5).) There is no evidence in the record that the Non-County Defendants were served with the Summons and Complaint. (*See* Case Docket, *in toto*.) Indeed, as to Santiago, there is no address for him in the record. (*See* "Rider #2 to Summons".) The time to have served the Non-County Defendants has long expired. *See* Fed. R. Civ. P. 4(m) (requiring a defendant be served within 90 days after the complaint is filed).

No one has appeared on behalf of the Non-County Defendants. (*See* Case Docket, *in toto; cf.,* Answer (ECF No. 9).) Plaintiff has not sought defaults against the Non-County Defendants; there is also no evidence that he has prosecuted this action against them. Accordingly, Plaintiff is deemed to have abandoned any claims against the Non-County Defendants, warranting their dismissal from this action. *See* Fed. R. Civ. P. 41(b).

No. 43 ("Reply")). For the reasons that follow, the County Defendants' Summary Judgment

Motion is GRANTED, and the Plaintiff's Strike Motion is DENIED.


II.     Background

   A. *Factual Background*[2]

      1. The Fire

   Sometime after 8:00 p.m. on February 25, 2015, there was a fire (hereafter, the "Fire") in

a commercial office building (the "Building") at 38 Northern Boulevard in Great Neck, New

York (hereafter, the "Fire Scene"). (*See* D-Rule 56.1 Stmt., ¶7; P-Rule 56.1 Stmt., ¶2.) Finding

signs that the Fire was set intentionally, fire fighting personnel called the Nassau County Police

Department ("NCPD") arson and bomb squad (hereafter, the Squad"). (*See* D-Rule 56.1 Stmt.,

¶8.)

      2. The Police Investigation

   Having received the call about the suspicious nature of the Fire, Kaminski, a Squad

member, responded to the Fire Scene to begin investigating it (hereafter, the "Investigation").

(*See* D-Rule 56.1 Stmt., ¶9; *see also* P-Rule 56.1 Stmt., ¶11.) At the Fire Scene, Kaminski spoke

---

[2] Unless otherwise indicated, the facts are taken from the County Defendants' Rule 56. 1
Statement in support of their Summary Judgment Motion (hereafter, "D-Rule 56.1 Stmt.")(*see*
ECF No. 32), and Plaintiff's Rule 56.1 Statement (hereafter, "P-Rule 56.1 Stmt.")(*see* ECF No.
30). Unless otherwise stated, a standalone citation to a Rule 56.1 Statement denotes that either
the parties agree, or the Court has determined, that the underlying factual allegation(s) is(are)
undisputed. Citation to a party's Rule 56.1 Statement incorporates by reference the document(s)
cited therein.

Both the Plaintiff and the County Defendants identified their respective exhibits with letters.
Therefore, for ease of identification, the Plaintiff's exhibits, which are attached to the
Declaration of Attorney Joseph Karlya (*see* ECF No. 33), shall have a "(P)" notation annexed to
his lettered exhibits (*e.g.*, "Ex. A(P)"), and the County Defendants' exhibits, which are attached
to the Declaration of Attorney Lalit Loomba (*see* ECF No. 35), shall have a "(D)" notation
annexed to their lettered exhibits (*e.g.*, "Ex. A(D)").

with Santiago, a witness. (*See* D-Rule 56.1 Stmt., ¶10; *see also* P-Rule 56.1 Stmt., ¶12.)
Santiago told Kaminski he: "observed a person enter the [B]uilding;" "heard an alarm go off
inside the [B]uilding;" "saw the same individual running out;" and, shortly thereafter, "observed
that the [B]uilding was on fire." (D-Rule 56.1 Stmt., ¶11.)

During the Investigation, Kaminski learned of an employment dispute between a
Building occupant and one of his former employees, a Dr. Anthony Moschetto ("Moschetto"),
who "became an initial suspect in the arson." (*Id.* at ¶14; *see also id.* at ¶¶12-13.) Kaminski had
fellow Squad member, Schiller, prepare a photo array that included Moschetto and "five other
men, selected randomly, of similar age and appearance" to show Santiago (hereafter, the "First
Photo Array"). (*Id.* at ¶15; *see also id.* at ¶16; P-Rule 56.1 Stmt., ¶¶13-14.) Upon review,
Santiago circled the photo of another man who he indicated "looks like" the person he saw on
the night of the Fire. (*Id.* at ¶16; *cf.*, P-Rule 56.1 Stmt., ¶15.)

As the Investigation continued, Baialardo "was identified as a suspect in the arson." (*Id.*
at ¶18.) Thereafter, on March 9, 2015, Kaminski showed Santiago a second photo array, which
consisted of photos of Baialardo and five other males of similar age and appearance (hereafter,
the "Second Photo Array"). (*See id.* at ¶19; *cf.*, P-Rule 56.1 Stmt., ¶16.) Santiago did not
identify Baialardo. (*See id.* at ¶20.)

In a March 12, 2015 written statement, Baialardo provided information to the police, *to
wit*: Moschetto had hired Baialardo to burn down the Building; Baialardo had recruited Plaintiff
and Chmela to help start the Fire; on the evening of the Fire, after picking up bottles of gasoline
from Baialardo, Chmela picked up Plaintiff from a homeless shelter (hereafter, the Shelter), and
proceeded to drive to the Building; Plaintiff "then entered the [B]uilding with the bag [containing
the gasoline] and started the [F]ire;" and, "Chmela and [Plaintiff] then met with Baialardo

4

confirming their actions" (hereafter, "Baialardo's Written Statement") (*Id.* at ¶22.) This information led to the preparation of a third photo array, which included a photo of Plaintiff as well as five other men of similar age and appearance and which was shown to Santiago (hereafter, the "Third Photo Array"; collectively with the First Photo Array and Second Photo Array, the "Photo Arrays"). (*See id.* at ¶23; *cf.*, P-Rule 56.1 Stmt., ¶18.) Santiago positively identified "Kalamaras as the person he saw entering the [B]uilding and then running out to the [B]iulding on the night of the [F]ire." (*Id.*, ¶24; *cf.*, P-Rule 56.1 Stmt., ¶18.)

On March 20, 2015, Smit issued a subpoena directed to the Shelter where Plaintiff was staying at the time of the Fire directing the production of a staff log book and an overnight body count document (hereafter, collectively, the "Shelter Documents"), which were produced. (*See* P-Rule 56.1 Stmt., ¶23; *see also* Plaintiff's Depo. Tr., 219-27; *cf.*, D-Rule 56.1Stmt., ¶¶69-70.) The log book indicates Plaintiff reported his plan to attend an Alcoholics Anonymous meeting the evening of the Fire. (*See* Plaintiff's Depo. Tr., 224:13-18 ("[Q:] Then it says, 'Client stated he plans on attending AA meeting at Hope house this evening.' . . . Did I read that properly? A: Yes.").) The Shelter's body count documentation indicates that on the night of the Fire, Plaintiff was in his assigned bed at the Shelter from between 12:15 a.m. and 7:00 or 8:00 a.m. (*See id.* at 225:20-226:23.) Plaintiff maintains the Shelter Documents provide "a reliable explanation for his whereabouts during the time that [the F]ire at [the Building] was set on February 25, 2015" (P-Rule 56.1 Stmt, ¶22; *see also id.* at ¶23), but the County Defendants do not concur. (*See* D-Rule 56.1 Stmt., ¶69 (stating the Shelter Documents establish only "that [P]laintiff was speaking with a counselor . . . about 6:00 p.m., and that [P]laintiff was in bed sometime between midnight and 7:00 a.m. on the morning of the date that the [F]ire was set"; *id.* at ¶70 (stating that

on the evening of the Fire, Plaintiff "admitted that he was not in the . . . [S]helter, but rather left to attend an Alcoholics Anonymous meeting").)

"On March 30, 2015, [] Kaminski and other members of the NCPD met with [] Baialardo for the purpose of making a recorded telephone call to [] Kalamaras [(hereafter, the "Recorded Call")]." (*Id.* at ¶26.) The phone number used to make the Recorded Call was associated with a contact in Baialardo's cell phone listed as "Jimmy". During the Recorded Call, Plaintiff implicated himself in the Fire by assuring Baialardo that he had not left his fingerprints at the Fire Scene and then offering to set another fire at the Building when Baialardo stated Moschetto was not satisfied with the results of the Fire. (*See id.* at ¶30.) "On April 14, 2015, . . . Schiller obtained the written statement of admission from [] Chmela," which corroborated information acquired from Baialardo (hereafter, "Chmela's Written Statement"; together with Baialardo's Written Statement, the "Written Statements"). (*Id.*, ¶32; *see also id.* at ¶33; *cf.*, P-Rule 56.1 Stmt., ¶25.)

### 3. Kalamaras' Arrest and Indictment

On April 14, 2015, Plaintiff was arrested by Kaminski and another officer, who placed Kalamaras in handcuffs. (*See id.* at ¶¶34, 40; *cf.*, P-Rule 56.1 Stmt., ¶¶4, 28.) "Plaintiff claims the handcuffs were "very tight" and "that he suffered injuries to his wrists," but also admits "he was not hit, struck with a weapon or kicked by any officer during his arrest" nor "sought medical attention for [his] alleged injuries." (*Id.* at ¶¶42, 43; *see also* ¶41 (stating Plaintiff "was cooperative when arrested"); ¶46 (stating Plaintiff "signed a physical condition questionnaire . . . indicating that he did not have any injuries"); ¶48 ("Kalamaras signed another physical condition questionnaire indicating that he was not suffering any injuries"); *cf.*, P-Rule 56.1 Stmt., ¶¶28-29.) Kaminski read Plaintiff his *Miranda* rights, after which Plaintiff provided pedigree information.

(*See id.* at ¶45.)  That same day, two felony complaints against Plaintiff were executed by a non-party police officer, with one accusing Plaintiff of the crime of burglary in the third degree and the other accusing him of the crime of arson in the third degree.  (*See id.* at ¶¶49-50.)  Also on April 15, 2015, Singas, together with the NCPD acting commissioner and a special agent of the U.S. Drug Enforcement Administration, held a press conference, announcing "that a joint investigation . . . led to the arrest of several individuals . . . during the course of a complex murder-for-hire plot . . . ."  (*See* Ex. J(P)) (ECF No. 33-10) (hereafter, the "Press Release").)  While it did not mention the Fire, the Press Release stated that Plaintiff had been arrested on charges of "Arson in the 3rd Degree (a C felony) and Burglary in the 3rd Degree (a D felony)" and faced a possible "maximum sentence of life in prison."  (*Id.* at 1.)  Smit and Donnelly were identified as those prosecuting the case.  (*See id.* at 2.)

"On April 22, 2015, a grand jury convened by the Office of the District Attorney for Nassau County returned an indictment charging [] Kalamaras with Arson in the Third Degree; Burglary in the Third Degree; and Criminal Mischief in the Second Degree [(hereafter, the "Indictment")]."  (*Id.*, ¶51.)

### 4.  The Ensuing State Court Action ("State Action")

In October 2015, Plaintiff moved the state court for a dismissal or reduction of the charges in the Indictment, but after an *in camera* inspection of the grand jury minutes, the state court judge denied Plaintiff's "motion in all respects finding 'that the evidence before the Grand Jury was legally sufficient to support the crimes charged in the [I]ndictment.'"  (*Id.* at ¶52 (quoting state court Dec. 3, 2015 order, *attached as* Ex. L(D)).)  In February 2016, Plaintiff again moved to dismiss the [I]ndictment on the grounds that the People improperly withheld *Brady* materials and committed other discovery violations; the "motion was denied in all respects."  (*Id.*

(citing state court Mar. 1, 2016 order, attached as Ex. M(D)); *see also id.* at ¶71 ("Although [P]laintiff made various motions during the pre-trial phase of his criminal case, none of those motions were granted."), and at ¶72 ("A video tape capturing [] Baialardo speaking with an undercover detective that [P]laintiff referenced in his deposition was turned over to [P]laintiff and his criminal defense attorney prior to the start of [P]laintiff's criminal trial.").)

A six-day jury trial on the charged crimes was held on April 25-28 and May 2-3, 2016. (*See id.* at ¶54.) At trial, Plaintiff stipulated that he had "provided a person [with] his bank account number and stated that phone number 631-371-1659 . . . was associated with his bank account." (Ex. D(D) (State Action Stipulation, dd. Apr. 28, 2016); *see also* D-Rule 56.1 Stmt., ¶28.) That was the same telephone number associated with a telephone Baialardo provided to Plaintiff sometime in 2014 and used to contact Plaintiff for the Recorded Call. (*See* D-Rule 56.1 Stmt., ¶¶25, 28.) "At the conclusion of the criminal trial[,] Kalamaras was acquitted on all charges." (*Id.* at ¶60; *cf.*, P-Rule 56.1 Stmt., ¶3.)

5. The Prosecutors' Roles

Donnelly and Smit represented the People in the State Action, with Donnelly as lead counsel. (*See id.* at ¶55, 58; *cf.*, P-Rule 56.1 Stmt., ¶¶6-7.) Prior to the trial: Donnelly negotiated terms of cooperation agreements with Baialardo and Chmela; Smit assisted in presenting evidence to the grand jury, represented the People at various pretrial hearings, and opposed Plaintiff's pretrial motions. (*See id.* at ¶¶56-57.) Singas "played no personal role in the prosecution of [] Kalamaras." (*Id.*, ¶59; *cf.*, P-Rule 56.1 Stmt., ¶5.)

*B. Procedural Background*

On February 24, 2017, Plaintiff commenced this action[3] asserting seven claims for relief:
(1) a claim for excessive force; (2) a claim for malicious abuse of process; (3) a claim for false
arrest; (4) a claim for malicious prosecution; (5) a claim for failure to intervene in connection
with the allegedly illegal prosecution of criminal charges against Plaintiff; (6) a *Monell* claim for
municipal liability against the County; and (7) a claim for conspiracy to violate Plaintiff's civil
rights. (*See* Complaint; *see also* County's Rule 56.1 Stmt., ¶62.) Plaintiff did not allege any
state-law claims. (*See id., in toto*.)

On June 12, 2017, the County answered the Complaint, denying the Plaintiffs' allegations
and raising several affirmative defenses,[4] including absolute and qualified immunity protection.
(*See* Answer (ECF No. 9).) On July 10, 2017, this Court established March 12, 2018 as the
discovery deadline and referred all outstanding discovery "to the assigned magistrate judge,"
who, at that time, was Magistrate Judge Shields.[5] (*See* July 10, 2017 Minute Entry (ECF No. 14)
(stating, *inter alia*, "[a]ll discovery shall be complete by 3/12/2018").)

Thereafter, on September 8, 2017, Magistrate Judge Shields scheduled an October 12,
2017 discovery conference. (*See* ECF No. 15 (hereafter, the "Discovery Conference Order").)
Among other things, the Discovery Conference Order also: made clear that the case had been
assigned to Magistrate Judge Shields "for the purposes of scheduling discovery [and addressing

---

[3] Plaintiff filed a Verified Complaint. (*See* ECF No. 1; *see also id.* at 23 (Plaintiff's sworn
certification).)

[4] At the July 10, 2017 Initial Conference, the County withdrew certain affirmative defenses, *i.e.,*
its First Affirmative Defense (re: noncompliance with N.Y. Gen. Mun. Law §§50-e, 50-I &/or
50-h), its Seventh Affirmative Defense (re: failure to extinguish all available state remedies), and
its Ninth Affirmative Defense (re: statute of limitations).

[5] On July 30, 2019, Magistrate Judge Shields recused herself from this case. (*See* ECF No. 51.)

the] resolution of discovery disputes"; instructed the parties to "meet and confer regarding the discovery needs of this case" prior to discovery conferences; included a "Discovery Plan Worksheet" that would "set[] forth a date for completion of all discovery"; and, advised the parties that "[a]t the [Discovery C]onference, the Court w[ould] consider the parties' suggested deadlines and, upon consideration of the rules and practices of the assigned District Judge, enter an appropriate scheduling order." (*Id.*)  Notably, attached to the Discovery Conference Order was a copy of Magistrate Judge Shields' Individual Practice Rules. (*See id.* (ECF No. 15-1).)

After the Discovery Conference, Magistrate Judge Shields entered a Scheduling Order which included the March 12, 2018 discovery deadline. (*See* Scheduling Order (ECF No. 17) at 1 ("***COMPLETION OF ALL DISCOVERY BY***: 3/12/18." (emphases in original)); *see also id.*, accompanying docket text ("The attached discovery plan worksheet is So Ordered by Magistrate Judge Anne Y. Shields on 10/12/2017.").)  The County Defendants sought a subsequent discovery conference regarding "certain deficiencies in [P]laintiff's response to the County Defendants [*sic*] time served discovery demands" in advance of taking the Plaintiff's deposition (ECF No. 23 at 1).[6]  Plaintiff made no requests for a discovery conference or additional discovery. (*See* Case Docket, *in toto*.)

On May 11, 2018, the County Defendants moved for summary judgment in their favor as to all of Plaintiff's claims.  Plaintiff opposed the Summary Judgment Motion and, pursuant to Rule 37(d) of the Federal Rules of Civil Procedure, cross-moved "to strike the County Defendants' Answer for failure to schedule depositions of the County Defendants in this action."

---

[6] The Magistrate Judge granted the County Defendants' motion for a discovery conference, which was held on January 25, 2018. (*See* Jan. 22, 2018 Electronic Order.)  At that conference, the parties reported they had resolved "all discovery disputes other than authorizations for cell phone records," which the parties would attempt to resolve on their own. (*See* Jan. 25, 2018 Minute Order (ECF No. 24).)  There was no reference to depositions. (*See id.*)

(*See* "Notice of Cross-Motion to Strike the Answer of the County Defendants" (ECF No. 29) at 1.)

### C.  *The Parties' Positions*

#### 1.  The Summary Judgment Motion

##### (*a.*)  *The Defendants*

The County Defendants argue that the Prosecutors are entitled to absolute immunity from all of Plaintiff's claims arising out of the State Action since: (i) there is no evidence that Singas personally participated in that Action (*see* Support Memo at 1) and (ii) the Press Release is insufficient to establish personal participation (*see* Reply at 4-5); Donnelly and Smit acted "directly in their capacities as prosecutors" (Support Memo at 2); and neither the creation of the Photo Arrays nor the service of a subpoena create a factual dispute concerning the scope of Donnelly's and Smit's prosecutorial activities that would deprive them of a prosecutorial absolute immunity.  (*See* Reply at 5-6.)  The County Defendants also assert that Plaintiff's excessive force claim fails for two reasons:  lack of participation by any of the County Defendants, and the Plaintiff's admission that he did not seek any medical attention for his alleged injuries.  (*See* Support Memo at 2; *see also* Reply at 7-8.)  Arguing Plaintiff cannot show that any of the individual County Defendants issued process or acted with a collateral objective to injure him, the County Defendants contend that Plaintiff's malicious abuse of process claim must also fail.  (*See* Support Memo at 2, 13 (arguing the only legal process were the two criminal complaints, neither of which were signed by any of the County Defendants); *see also* Reply at 8-9.)  The County Defendants further posit that Plaintiff's false arrest claim is unsustainable "because there was ample information and evidence available at the time of [P]laintiff's arrest to support the existence of probable cause."  (Support Memo at 2*; see also id.* at 14-15 (claiming

Detectives and Officers entitled to qualified immunity).)  Similarly, the County Defendants argue

that because the indictment returned against Plaintiff creates a presumption of probable cause,

which Plaintiff has not overcome, his malicious prosecution cause of action cannot be

maintained.  (*See* Support Memo at 2; *see also id.* at 15-17 (arguing "[p]robable cause is a

complete defense to a claim for malicious prosecution, in the absence of exculpatory facts" to

which Plaintiff has failed to point).)  As to Plaintiff's failure to intervene claim, which the

County Defendants contend is based upon the prosecutors' alleged failure to withdraw charges,

the County Defendants aver immunity forestalls Plaintiff's success on this claim.  (*See* Support

Memo at 2, 17-18.)  Further, the County Defendants contend that Plaintiff's *Monell* claim fails

because the "Plaintiff has not introduced any evidence concerning the training provided by

Nassau County."  (Reply at 12.[7])  Finally, in the absence of any evidence of a conspiracy, the

County Defendants argue Plaintiff's conspiracy claim fails.  (*See* Support Memo at 2, 19.)

### (*b.*)  The Plaintiff

Plaintiff contends that there is a material factual dispute as to Singas' personal

participation in the underlying State Action, based upon "all of the facts asserted in" the

Complaint and upon the Press Release.  (Opp'n at 4.[8])  Opposing Donnelly's and Smit's

invocation of prosecutorial immunity and pointing to the Photo Arrays used to identify Plaintiff

---

[7]  The County Defendants highlight that "Plaintiff completely changed the theory of his *Monell* claim in opposing [the Summary Judgment Motion.  Plaintiff originally advanced his *Monell* claim on the County's alleged tolerance of "a pattern and practice of unjustified, unreasonable, and illegal uses of force and unreasonable and unlawful searches and seizures."  (Support Memo at 18 (further citation omitted))].  He now asserts that Nassau County should be liable under a theory of failure to train."  (Reply at 12.)

[8]  Plaintiff also states he "has not had an opportunity to conduct a deposition of [] Singas in order to question her as to any personal involvement in the underlying criminal investigation and prosecution of [Plaintiff]."  (Opp'n at 4.)  This argument is addressed, *infra*, at Part III(B)(1).

as a potential suspect in the Fire and Smit's subpoenas of the Shelter Documents, Plaintiff argues there is a genuine issue of material fact whether Donnelly and Smit "exceeded their advocative functions as prosecutors." (*See id.* at 5.[9]) As to his excessive force claim, Plaintiff asserts that the claim "must not fail on grounds of personal participation," as there is a genuine issue of fact as to who placed the Plaintiff in handcuffs. (*Id.* at 6.) Moreover, Plaintiff maintains that considering his undisputed cooperation at the time of his arrest and given his back injuries and "a lingering condition in his fingertips," there is a disputed material fact whether he was subjected to excessive force when handcuffed, thereby precluding summary judgment. (*Id.* at 7.) Concerning his malicious prosecution and malicious abuse of process claims, the essence of Plaintiff's argument to each is that "there are genuine issues of material fact supporting a lack of probable cause to arrest and prosecute" him, relying upon the Photo Arrays, the Shelter Documents, and the video surveillance of Baialardo in which he allegedly made a confession. (*See id.* at 8-9, and at 9-10 (citing *Savino v. City of N.Y.*, 331 F.3d 63 (2d Cir. 2003); *Manganiello v. City of N.Y.*, 612 F.3d 149 (2d Cir. 2010).) Plaintiff also claims that neither the Written Statements nor the identifications of Santiago were reasonably trustworthy, and points to the Shelter Documents as evidence that he was elsewhere when the Fire occurred. (*See id.* at 10-11.) As to his "failure to intervene" claim, Plaintiff: propounds that it "stems from the actions of [] Kaminski and Smit[10] of arresting [Plaintiff] based upon fabricated statements of [] Baialardo and [] Chlema . . ." (*id.* at 12); and, argues that no reasonably competent police officer, faced

---

[9] Plaintiff continues to raise his need-to-depose argument but directed towards Donnelly and Smit. (*See* Opp'n at 5.) *See supra* note 8.

[10] Given the context of Plaintiff's argument raised in Point VI of his Opposition (*see* Opp'n at 12-13), the Court assumes the naming of Smit instead of Schiller, the detective working with Kaminski on the Investigation, to be a scrivener's error.

with the information available to Kaminski and Schiller at the time of the arrest could find

Plaintiff's arrest to be legal.  (*See id.* at 12-13 (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d

123, 129 (2d Cir. 1997).)  Plaintiff contends the Detectives' "short shrift investigation into the

building fire" is evidence of "deliberate indifference to Plaintiff's abrogated rights," establishing

a failure to train (*id.* at 13), and that Baialardo's and Chmela's cooperation with the County was

sought by the County to support its prosecution of Plaintiff and is evidence of a conspiracy.  (*See*

*id.* at 15.)

### 2.  The Strike Motion

#### (*a.*)  The Plaintiff

The Plaintiff seeks to have the County Defendants' Answer stricken for their alleged

failure to comply with discovery requests (*see* Opp'n at 1), and that "[t]o date, only the

deposition of . . . Kaminski has been completed" and that, although Plaintiff's counsel sought "to

schedule continued depositions of the remaining County Defendants" he received "the response

that depositions would not be scheduled until" Plaintiff's counsel "responded with certain

documentary responses . . . ."  (*Id.* (citing Ex. L(P) (affidavit of Plaintiff's counsel's paralegal

(hereafter, "Brunswick Affidavit")).)

#### (*b.*)  The Defendants

Characterizing Plaintiff's Strike Motion as "a stunt," the County Defendants contend that

"[P]laintiff attempts to manufacture a discovery dispute by claiming – two months after the close

of discovery and two weeks after being served with the County Defendants' [Summary

Judgment M]otion – that he was denied the opportunity to conduct the deposition of the County

Defendants."  (Reply at 12.)  They assert that "Plaintiff's counsel never sought depositions of the

County Defendants after concluding [] Kaminski's deposition on February 9, 2018" (*id.*), and to

the extent Plaintiff would rely upon the Brunswick Affidavit to show otherwise, the County

Defendants call into question the veracity of said affidavit. (*See* Reply at 15 (identifying

multiple inadequacies with Brunswick Affidavit)). They further highlight Plaintiff's counsel's

noncompliance with the Magistrate Judge's Individual Practice Rules in bringing the Strike

Motion (*see* Reply at 15 (quoting AYS Individual Practice Rule VI(C) ("Discovery

Disputes/Motions")), which, they argue, is a basis to deny that Motion. (*See id.* at 15-16 (citing

*Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC*, No. 15-cv-6519, 2017 U.S. Dist. LEXIS117439, at

*4 (E.D.N.Y. July 26, 2017)(declining to consider cross-motion for discovery where movant

failed to meet and confer before making motion)).)


III.    Discussion

    A. *Applicable Law*

        1. The Strike Motion

    Paragraph (d) of Rule 37 of the Federal Rules of Civil Procedure authorizes a court "on

motion, [to] order sanctions, if[,] a party or a party's officer, director, or managing agent . . .

fails, *after being served with proper notice*, to appear for that person's deposition . . . ." Fed. R.

Civ. P. 37(d)(1)(A)(i) (emphasis added). In conjunction with the Federal Rule 37, Local Civil

Rule 37.3 provides:

> (a) Good-Faith Effort to Resolve. Prior to seeking judicial
> resolution of a discovery or non-dispositive pretrial dispute, the
> attorneys for the affected parties . . . shall attempt to confer in good
> faith in person or by telephone in an effort to resolve the dispute, in
> conformity with Fed. R. Civ. P. 379a)(1).
> * * *
> (c) Other Discovery and Non-Dispositive Pretrial Disputes.
> Where the attorneys for the affected parties . . . cannot agree on a
> resolution of any other discovery dispute . . . , *they shall notify the*

> *Court* by letter not exceeding three pages in length *outlining the nature of the dispute* and attaching the relevant materials. * * *

Local Rule 37.3(a), (c) (emphasis added). Moreover, according to my Individual Rule 5(D), "[u]nless the assigned Magistrate Judge's rules provide for a shorter period, or otherwise ordered by the Court, *a party must bring to the Court's attention the failure of any other party to comply with a discovery request* or deadline *within ten (10) days of the failure* to comply, *or that party will be deemed to have waived such discovery*." SJF Individual Rule 5(D) (emphasis added). Further, Magistrate Judge Shields[11] requires that after "undertak[ing] a good faith effort to resolve any discovery disputes[,] . . . the attorneys are to 'initiate a conference call" with her Chambers before they may bring a discovery motion before her. (AYS Individual Practice Rule VI(C) ("Attorneys may ***not*** bring a discovery motion before the court, either by way of motion or letter, *unless authorized to do so after the telephone conference is held*." (bold and underline emphases in original; italicized emphasis added)).)

### 2. The Summary Judgment Motion

#### (*a*.) The Summary Judgment Standard

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); *accord Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); *see also Ricci v. DeStefano*, 557

---

[11] *See supra* note 5.

U.S. 557, 129 S. Ct. 2658, 2677 (2009) ("On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (emphasis added; internal quotations and citation omitted)).

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the non-moving party," *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (quotations, alterations and citation omitted), and "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019) (quotations and citation omitted); *see also Hancock v. County of Rensselaer*, 823 F.3d 58, 64 (2d Cir. 2018) ("In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party."). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)); *accord Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (quotations, brackets and citation omitted); *accord Jaffer*, 887 F.3d at 114. "[W]hen the moving party has carried its burden[,] . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [,]" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec.*, 475 U.S. at 586-87), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" *Miner v. Clinton County, N.Y.*,

541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted). The nonmoving party can only defeat summary judgment by "adduc[ing] evidence on which the jury could reasonably find for that party." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012) (quotations, brackets and citation omitted). "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient' to defeat a summary judgment motion[,]" *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)), and "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); *see also Federal Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (quoting *Fletcher v. Alex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995))); *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) ("While we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party, . . . conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment[.]" (quotations, alterations and citations omitted)); *Elliott v. Gouverneur Tribune Press, Inc.*, No. 13-cv-0055, 2014 WL 12598275, at *2 (N.D.N.Y. Sept. 29, 2014) ("[I]t is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings." (citing *Celotex Corp., v. Catrett*, 477 U.S. 317, 324 (1986); further citation omitted)). Since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party[,] . . . [i]f the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (quotations and citations omitted).

Summary judgment is warranted, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *accord El-Nahal v. Yassky*, 835 F.3d 248, 252 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2187 (2017); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) ("[W]here the nonmoving party will bear the burden of proof on an issue at trial, the moving party may satisfy its burden [of showing the absence of a genuine dispute as to any material fact] by pointing to an absence of evidence to support an essential element of the nonmoving party's case[.]" (quotations, alterations and citation omitted)). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23; *accord Crawford*, 758 F.3d at 486; *see also Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) ("Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment."). "The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323 (quotations and citation omitted). Accordingly, when "the burden of persuasion at trial would be on the non-moving party . . . the party moving for summary judgment may satisfy his burden of production under Rule 56 in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage*,

875 F.3d at 114 (quotations and citation omitted); *see also DeRogatis v. Bd. of Trs. of Welfare Fund of Int'l Union of Operating Eng'rs Local 15, 15A, 15C & 15D, AFLCIO*, 904 F.3d 174, 187 (2d Cir. 2018) (holding that when the ultimate burden of proof at trial would be on the non-moving party, the moving party "may satisfy their burden of production under Rule 56 by negating an essential element of the [non-moving party's] claim, whether by submitting undisputed evidence to that effect or by demonstrating the insufficiency of the [non-moving party's] own evidence" (quotations, alterations and citation omitted)); *see also Fuertado v. City of N.Y.*, 337 F. Supp.2d 593, 599 (S.D.N.Y. 2004)("The moving party may use a memorandum or brief to 'point to' the absence of evidence and thereby shift to the non-movant the obligation to come forward with admissible evidence supporting its claim." (citations omitted)); *Olutosin v. Lee*, No. 14-cv-0685, 2018 WL 4954107, at *8 (S.D.N.Y. Oct. 12, 2018)(same (citing *Fuertado*)).

### (*b.*) *Immunities*

#### (i.) Absolute Immunity

"Absolute immunity is reserved for officials who perform 'special functions' and deserve absolute protection from damages liability. Among these are prosecutors, and persons working under their direction, when they function as advocates for the state in circumstances 'intimately associated with the judicial phase of the criminal process.'" *Bernard v. County of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004)(quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)). Absolute immunity has been extended "to non-prosecutor officials when they are performing 'functions analogous to those of a prosecutor.'" *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Butz v. Economou*, 438 U.S. 478, 515 (1978)). In making such a decision, a court is to engage in a "functional" analysis, *i.e.*, analyzing "the kind of function the employee is

fulfilling in performing the acts complained of." *Id.* (citing *Briscoe v. LaHue*, 460 U.S. 325, 342 (1983)). The focus of this analysis is "'the nature of the function performed, not the identity of the actor who performed it.'" *Bernard*, 356 F.3d at 503 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). Thus, for example, relying on that approach, "the *Butz* Court held that an agency official who decides to institute an administrative proceeding is entitled in such circumstances to absolute immunity, since that decision is 'very much like the prosecutor's decision to initiate or move forward with a criminal prosecution.'" *Cornejo*, 592 F.3d at 127 (quoting *Butz*, 438 U.S. at 515).

The person claiming absolute immunity bears the burden of establishing its applicability. *See Bernard*, 356 F.3d at 503 (citing *Butz*, 438 U.S. at 506). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused." *Id.* (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)).

(ii.) Qualified Immunity

"[A]n official is entitled to qualified immunity (1) if the plaintiff has not alleged a violation of a constitutional right, (2) if that right was not clearly established at the time of the conduct, *or* (3) if the official's actions were not objectively unreasonable in light of clearly established law." *Almonte v. City of Long Beach*, 478 F.3d 100, 109 (2d Cir. 2007) (citing *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211-12 (2d Cir. 2003)); *see also Wilson v. Layne*, 526 U.S. 603, 609 (1999) (stating individual defendants are "'shielded from liability for civil damages'" under §1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A right is clearly established if (1) the law is defined

with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.'" *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir.2003)(quoting *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir.1998)); *see also Mandola v. County of Nassau*, 222 F. Supp.3d 203, 216 (E.D.N.Y. 2016)(discussing qualified immunity standard); *Laster v. Mancini*, No. 07-cv-8265, 2013 WL 5405468, at *30 (S.D.N.Y. Sept. 25, 2013)(adopting report and recommendation)(same).

As the Second Circuit has described it, "qualified immunity provides a broad shield," thereby giving officials "'breathing room to make reasonable but mistaken judgments' without fear of potentially disabling liability." *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)). It "shields public officials from personal liability for official actions, 'unless their conduct violates clearly established constitutional rights of which an objectively reasonable official would have known.'" *Almonte*, 478 F.3d at 108 (quoting *Harhay*, 323 F.3d at 211; further citation omitted).

In making determinations on qualified-immunity claims, the Supreme Court requires a court to determine two matters, *i.e.*, (1) whether the facts alleged by the plaintiff are sufficient to make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (discussing *Saucier v. Katz*, 533 U.S. 194 (2001)). It is within the court's discretion to determine which of the two inquiries to decide first. *See id.* at 236.

(*c.*) *§ 1983 Causes of Action, Generally*

Section 1983 provides for an action at law against a "person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects or causes to be

subjected, any citizen of the Unites States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and law."  42 U.S.C. § 1983.  It "is not itself a source of substantive rights"; rather, it merely provides "a method for vindicating federal rights elsewhere conferred . . . ."  *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004)(quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Lockwood v. Town of Hempstead*, No. 16-cv-3756, 2017 WL 3769253, at *2 (E.D.N.Y. Aug. 28, 2017) (stating § 1983 provides only a procedure for redress for the deprivation of rights established elsewhere)(adopting report & recommendation).  "Therefore, to prevail on a claim arising under Section 1983, a plaintiff must establish: '(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law.'"  *Lockwood*, 2017 WL 3769253, at *2 (quoting *Hawkins v. Nassau County Corr. Facility*, 781 F. Supp.2d 107, 111 (E.D.N.Y. 2011)).

(*d.*)  *Excessive Force Claim*

Claims against police officers for using "excessive force" are analyzed under the Fourth Amendment's reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 397 (1989). Determining whether the force used was unreasonable, and therefore excessive, requires "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham*, 490 U.S. at 396 (internal quotation marks omitted)).  This balancing requires close examination of the totality of the circumstances in each particular case, including whether the suspect poses a threat to the safety of others, resists or attempts to evade arrest, and the severity of the crime at issue.  *Id.* (citing *Graham* 490 U.S. at 396).  The Court must also be mindful that "police officers are often forced to make split-second judgments— in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396–97.

> At the summary judgment stage, because of the "fact-specific nature" of the objective reasonableness inquiry, "granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004). Thus, to prevail on a motion for summary judgment, the evidence must show that "no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice." *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995).

*Burch v. City of N.Y.*, No. 11-cv-2841, 2016 WL 11430773, at *9 (E.D.N.Y. Apr. 22, 2016); *see also Hodge v. Vill. of Southampton*, 838 F. Supp.2d 67, 75 (E.D.N.Y. 2012)("Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." (quoting *Graham*, 490 U.S. at 396 (citations and internal quotations omitted))); *Lemmo v. McKay*, No. 08-cv-4264, 2011 WL 843974, at *4-6 (E.D.N.Y. Mar. 8, 2011)(discussing *Graham*).

### (*e*.) *Malicious Abuse of Process*

> Under either New York or federal law, "a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir.1994). * * * "[T]he proper use of legal process based on an improper or malicious motive such as a desire for retaliation is insufficient to satisfy the 'collateral objective' requirement." *Pinter v. City of New York*, 976 F. Supp.2d 539, 568 (S.D.N.Y.2013). "A malicious abuse of process claim thus requires an ulterior purpose such as the infliction of economic harm, extortion, blackmail, or retribution." *Hovos v. City of New York*, 999 F. Supp.2d 375, 391 (E.D.N.Y. 2013).
>
> "[T]he gist of abuse of process is the improper use of process after it is regularly issued." *Cook*, 41 F.3d at 80. Accordingly, to succeed on an abuse of process claim, a plaintiff must not only show a collateral objective, but must show that that objective was pursued after legal process was issued. *Richardson*

> *v. N.Y.C. Health & Hosps. Corp.*, No. 05–CV–6278 (RJS), 2009
> WL 804096, at *16–17 (S.D.N.Y. Mar.25, 2009).
>> "Finally, while the law is not entirely settled on this point,
>> the weight of authority holds that the presence of probable cause
>> negates a claim for abuse of criminal process." *Pinter*, 976 F.
>> Supp.2d at 568–69 (collecting cases).

*Slater v. Mackey*, No. 12-cv-4325, 2015 6971793, at *10 (E.D.N.Y. Nov. 10, 2015); *see also*

*Fiedler v. Incandela*, 222 F. Supp.3d 141, 164-65 (E.D.N.Y. 2016)(same); *Hurley v. Town of*

*Southampton*, No. 17-cv-5543, 2018 WL 3941944, at *15-16 (report & recommendation)(same),

*adopted by electronic order* (E.D.N.Y. Sept. 21, 2018).

### (f.) False Arrest

A false arrest claim based on the Fourth Amendment right to be free from unreasonable

seizures is substantially the same as a false arrest claim under New York law. *See Jocks v.*

*Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003); *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir. 1996);

*Harrison v. County of Nassau*, No. 15-cv-2712, 2018 WL 5093257, at *8 (E.D.N.Y. August 31,

2018, 2018)(same), *report & recommendation adopted*, 2018 WL 4583491 (E.D.N.Y. Sept. 24,

2018). A plaintiff establishes a claim for false arrest by proving that: (1) defendants intended to

confine him; (2) he was conscious of the confinement; (3) he did not consent to be confined; and

(4) the confinement was not otherwise privileged. *See Parisi v. Suffolk County,* No. 04-cv-2187,

2009 WL 4405488, at *5 (E.D.N.Y. Nov. 30, 2009) (citing *Singer v. Fulton County Sheriff,* 63

F.3d 110, 118 (2d Cir. 1995)); *see also Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)

(stating a false arrest claim requires a plaintiff to show "defendant intentionally confined him

without his consent and without justification"). "Under New York law, the existence of probable

cause is an absolute defense to a false arrest claim." *Jaegly v. Couch,* 439 F.3d 149, 152 (2d Cir.

2006); *see also Weyant,* 101 F.3d at 852 (noting that probable cause to arrest is a complete

defense to an action for false arrest "whether that action is brought under state law or under § 1983").

Whether probable cause exists is determined as of the moment of the arrest. *See Forester v. Weisbrot*, No. 15-cv-076, 2016 WL 2853530, at *3 (E.D.N.Y. May 13, 2016). "Probable cause to arrest exists when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Escalera*, 361 F.3d at 743 (quoting *Weyant*, 101 F.3d at 852). "The validity of the arrest does not depend on whether the suspect actually committed a crime . . . . [T]he kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) (citing *Gerstein v. Pugh*, 420 U.S. 103, 119–123 (1975); further citation omitted).

### (g.) *Malicious Prosecution*

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002)(citations omitted); *see also Graham v. City of N.Y.*, 869 F. Supp.2d 337, 355 (E.D.N.Y. 2012)("Generally, the elements of a federal claim for malicious prosecution under § 1983 are borrowed from the underlying analogous claim under state law."). To establish a malicious prosecution claim under New York law, a plaintiff is "required to show the following: '(1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice[,] and[] (4) the matter

terminated in plaintiff's favor.'" *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016)(alterations

in original)(quoting *Cameron v. City of N.Y.*, 598 F.3d 50, 63 (2d Cir. 2010)).

### (*h*.) *Failure to Intervene*

"It is well established that law enforcement officers carry with them an affirmative duty

of intervention to protect against the infringement of constitutional rights from conduct

committed by other officers in their presence." *Mandola*, 222 F. Supp.3d at 220–21 (citing

*Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014)); *Curley v. Vill. of Suffern*, 268 F.3d 65, 72

(2d Cir. 2001); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *O'Neill v. Krzeminski*, 839

F.2d 9, 11 (2d Cir. 1988). "To prove such a claim, a plaintiff must show that '(1) the officer had

a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's

position would know that the victim's constitutional rights were being violated; and (3) the

officer does not take reasonable steps to intervene.'" *Pierce v. City of N.Y.*, 293 F. Supp.3d 306,

313 (E.D.N.Y. 2017)(quoting *Jean–Laurent v. Wilkinson*, 540 F. Supp.2d 501, 512 (S.D.N.Y.

2008) (citing *O'Neill*, 839 F.2d at 11-12)).

### (*i*.) *Monell* Claim

Under *Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978), "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven,* 691 F.3d 72, 80 (2d Cir. 2012). In order to prevail on such a claim against a municipal defendant, the plaintiff must establish as a prerequisite an underlying constitutional violation on the part of individual municipal actors. *See Segal v. City of N.Y.,* 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); *Askins v. Doe No. 1,* 727 F.3d 248, 253 (2d Cir. 2013) (same).

*Sethi v. Nassau County*, No. 11-cv-6380, 2014 WL 2526620, at \*6 (E.D.N.Y. June 3, 2014); *see also Moroughan v. County of Suffolk*, 99 F. Supp.3d 317, 326 (E.D.N.Y. 2015)(same).

(*j.*) *§ 1985 Conspiracy Claim*

"To state a claim for conspiracy to violate one's constitutional rights under 42 U.S.C. § 1985(3), a plaintiff mus[t] allege: (1) some class-based discriminatory animus underlying the defendant's actions; and (2) that the conspiracy was aimed at interfering with plaintiff's protected rights." *Trombley v. O'Neill*, 929 F. Supp.2d 81, 96 (N.D.N.Y. 2013) *(citing Brito v. Arthur,* 403 F. App'x 620, 621 (2d Cir. 2010); further citation omitted). "Vague and conclusory allegations that defendants entered into an unlawful agreement will not suffice to state a conspiracy claim under . . . § 1985(3)." *Id.* at 97 (citing *Kiryas Joel Alliance v. Vill. of Kiryas Joel,* 495 F. App'x 183, 190-91 (2d Cir. 2012); further citation omitted); *Emmerling v. Town of Richmond,* 434 F. App'x 10, 12 (2d Cir.2011). Rather, "a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Kiryas Joel Alliance,* 495 F. App'x at 190 (quoting *Webb v. Goord,* 340 F.3d 105, 110-11 (2d Cir. 2003)).

"Section 1986 provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so. Thus, a § 1986 claim must be predicated upon a valid § 1985 claim." *Thomas v. Roach*, 165 F. 3d 137, 147 (2d Cir. 1999) (internal quotations and citations omitted); *see also White v. City of N.Y.*, No. 17-cv-2404, 2019 WL 1428438, at \*4 (S.D.N.Y. Mar. 29, 2019) (same (quoting *Thomas*)); *K.W., ex rel., Brown v. City of N.Y.*, 275 F.R.D. 393, 399 (E.D.N.Y. 2011) (same (quoting *Thomas*)).

*B. The Instant Case*

1. The Strike Motion

Plaintiff's Strike Motion "seeks an Order pursuant to Fed. R. Civ. P. 37(d), striking the Answer of the County Defendants for failure to schedule and complete depositions of the County Defendants" (Opp'n at 1), based upon Plaintiff's own failure to follow through on his single attempt to schedule the depositions of all the named County Defendants other than Kaminski (herein, the "Other Defendants"). (*See id.* (citing Brunswick Affidavit[12])).) However, Rule 37(d) is not applicable as there is no evidence that the Other Defendants were served with any notice (*e.g.*, subpoenas or court orders) directing them to appear at depositions. *See* Fed. R. Civ. P. 37(d)(1)(A)(i); *see also Doe v. Mastoloni*, 307 F.R.D. 302, 309 (D. Conn. 2015)("[S]anctions under Rule 37(d) are reserved for the most flagrant instances of discovery *non-compliance*." (emphasis in original)). In the absence of a properly noticed deposition, there can be no non-compliance.

Further, and even if Rule 37(d) were applicable, the time for Plaintiff to have raised the County Defendants' purported non-cooperation with scheduling the depositions of the Other Defendants was as soon as it became apparent that he could not resolve that scheduling issue with the County Defendants' counsel, *see* Local Rule 37.3(c), but in no event within ten days after the County Defendants' counsel's alleged failure to comply with Plaintiff's scheduling request, *see* SJF Individual Rule 5(D), which presumably would have been no later than February 21, 2018. (*See, e.g.*, Brunswick Affidavit, ¶3 ("Subsequent to February 9, 2018, I did speak with counsel for the County Defendants by telephone in order to schedule the continued

---

[12] Affiant Brunswick is a paralegal in the office of Plaintiff's counsel. (*See* Ex. L(P), ¶1.)

depositions[13] of the remaining named County Defendants other than . . . Kaminski.").)  By

failing to timely raise the County Defendants' supposed non-compliance with Plaintiff's

deposition scheduling request, Plaintiff is deemed to have waived that non-compliance.  In any

event, a single request to schedule a specific deposition that is meet with a *quid pro quo* request

for outstanding discovery falls short of the mandated good faith effort in which attorneys[14] are

required to engage to resolve a purported discovery dispute.  (*See id.* at ¶5 ("Instead of agreeing

to schedule the deposition of . . . Schiller, counsel [for the County Defendants] stated that the

deposition would only be scheduled once his office received certain documentary responses from

[Plaintiff's counsel's] office.").)  To the extent Plaintiff would rely on his counsel's May 3, 2018

letter to the County Defendants' counsel, requesting availability dates for the depositions of

Schiller, Donnelly and Smit, to establish a good faith effort in resolving this issue, it is woefully

unpersuasive: discovery closed on March 12, 2018 and no extension of that deadline was

requested; and, the County Defendants had already served their Summary Judgment Motion

upon the Plaintiff on April 20, 2018.  *Cf.*, *Jackson v. Fed. Express*, 766 F.3d 189, 199 (2d Cir.

2014)(affirming denial of motion to reopen discovery where discovery deadline had passed and a

fully briefed summary judgment motion was pending).

     Moreover, there is no evidence that Plaintiff sought court intervention to resolve this

alleged deposition scheduling dispute.  (*Cf.,* Case Docket, *in toto, with* AYS Individual Practice

Rule C ("Where attorneys cannot agree upon resolution of a discovery dispute, they *shall* initiate

---

[13]  The Court is unclear why these depositions are characterized as "continued depositions" as there is no evidence they were scheduled, let alone begun.

[14]  It is noteworthy that both the Local Civil Rules and Magistrate Judge Shields' applicable Rule specifically identify attorneys or counsel as those who are to engage in good faith efforts to resolve discovery disputes, and not, more generically, the parties.  *See* Local Civil Rule 37.3; AYS Individual Practice Rule C.

a conference call with this court." (emphasis added).) And, even if not deemed waived, there is

no evidence that Plaintiff was authorized to do so. *See* AYS Individual Practice Rule C

("Attorneys may **not** bring a discovery motion before the court . . . *unless authorized to do so*

*after the telephone conference is held*." (bold emphasis in original; italicized emphasis added).)

In sum, there is no basis to impose the sanction sought by Plaintiff.

              2. The Summary Judgment Motion

                   (*a.*) *Plaintiff's Local Rule 56-1 Statement*

       When moving for summary judgment, in addition to complying with the Federal Rule of

Civil Procedure 56, the parties must comply with Local Rule 56.1 of the United States District

Courts of the Southern and Eastern Districts ("Local Rule 56"). As the Second Circuit has

instructed, the Local Rule 56 "requirement is strict". *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d

412, 417 (2d Cir. 2009). Among other things, it "' requires that any motion for summary

judgment be accompanied by a list of the "material facts as to which the moving party contends

there is no genuine issue to be tried.' S.D.N.Y. & E.D.N.Y. R.56.1(a). The nonmoving party

*must respond to each numbered allegation in the moving party's statement* and include, if

necessary, a statement of the additional material facts, as to which a genuine issue exists."

*Parris v. Acme Bus Corp.*, 956 F. Supp. 2d 384, 392 (E.D.N.Y. 2013) (citing Local Rule 56.1(a)

& (b)) (emphasis added). Furthermore, Local Rule 56.1(c) states that:

> [e]ach numbered paragraph in the statement of material facts set
> forth in the statement required to be served by the moving party
> *will be deemed to be admitted* for purposes of the motion *unless*
> **specifically** *controverted* **by a corresponding numbered**
> **paragraph** in the statement required to be served by the opposing
> party.

(Italicized and boldface emphases added); *see also Giannullo v. City of N.Y.*, 322 F.3d 139, 140

(2d Cir. 2003)("If the opposing party then fails to controvert a fact so set forth in the moving

party's [Local] Rule 56.1 statement, that fact will be deemed admitted." (citations omitted));

*Taylor & Fulton Packing, LLC v. Marco Intern. Foods, LLC*, No. 09-cv-2614, 2011 WL

6329194, at *4 (E.D.N.Y. Dec. 16, 2011)("Where a nonmovant . . . files a deficient statement,

courts frequently deem all supported assertions in the movant's statement admitted and find

summary judgment appropriate." (footnote omitted)).  Moreover, to specifically controvert a

statement of material fact, a nonmovant is required to do so with specific citation to admissible

evidence.  *See* Local Rule 56(d); *see also Ezagui v. City of N.Y.*, 726 F. Supp.2d 275, 285 n.8

(S.D.N.Y. 2010)(noting statements which a nonmovant does "not specifically deny–with

citations to supporting evidence–are deemed admitted for purposes of [movant's] summary

judgment motion") (collecting cases); *Universal Calvary Church v. City of N.Y.*, No. 96-cv-4606,

2000 WL 1745048, *2 n.5 (S.D.N.Y. Nov. 28, 2000).

     Here, "[a]s required pursuant to Local Rule 56.1 in support of" their Summary Judgment

Motion, the County "Defendant[s] submitted a Rule 56.1 Statement identifying facts supported

by citations to record evidence.  [(*See* ECF No. 32.)]  In opposition to [the County] Defendant[s'

M]otion, Plaintiff failed to submit a statement containing 'correspondingly numbered

paragraph[s] responding to each numbered paragraph' in [the County] Defendant[s'] Rule 56.1

Statement.  *See* Local Rule 56.1(b).  Rather, Plaintiff submitted h[is] own Statement of

Undisputed Material Facts Pursuant to Local [] Rule 56.1  [(*See* ECF No. 30.)]  As Plaintiff

failed to specifically controvert the facts in [the County] Defendant[s'] Local Rule 56.1

Statement, the facts contained therein that are supported by record evidence are deemed admitted

for purposes of the instant [M]otion."  *Skates v. Inc. Vill. of Freeport*, 265 F. Supp.3d 222, 233

(E.D.N.Y. 2017)(citing *Verlus v. Liberty Mut. Ins. Co.*, No. 14-cv-2493, 2015 WL 7170484, at

*1 (S.D.N.Y. Nov. 12, 2015) ("Plaintiffs' failure to specifically controvert Defendant's Local

Civil Rule 56.1 Statement requires this Court to deem Defendant's version of the facts admitted for purposes of this motion."); *Gadsden v. Jones Lang Lasalle Ams., Inc.*, 210 F.Supp.2d 430, 438 (S.D.N.Y. 2002) ("Courts in this circuit have not hesitated to deem admitted the facts in a movant's Local Civil Rule 56.1 Statement that have not been controverted by a Local Civil Rule 56.1 statement from the nonmoving party.").

### (*b.*) The Official Capacity Claims

Plaintiff has sued the Prosecutors, Detectives, and Officers both in their individual and official capacities. (*See* Complaint, ¶¶3-10.) However, it is well-settled than "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [municipal] entity [of which the officer is an agent]." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *accord Castanza v. Town of Brookhaven*, 700 F. Supp.2d 277, 283-84 (E.D.N.Y. 2010) ("Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." (brackets omitted; internal quotation marks and citation omitted)). Hence, "[w]ithin the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant." *Phillips v. County of Orange*, 894 F. Supp.2d 345, 385 (S.D.N.Y. 2012)(collecting cases). Because the County is named in the Complaint (*see* Complaint, ¶2), the claims against the Prosecutors, Detectives, and Officers in their official capacities are duplicative and properly dismissed. *See, e.g., Field Day, LLC v. County of Suffolk*, 799 F. Supp.2d, 205, 214 (E.D.N.Y. 2011)(dismissing, on motion for summary judgment, claims against individual sued in his official capacity, because real party in interest was the co-defendant County)(citing *Hafer v. Melo*, 502 U.S. 21, 25-26 (1991); *Graham*, 473 U.S. at 167 n.14).

(*c.*).  *The Prosecutors*

(i.)  Singas

Despite Plaintiff's Complaint being verified, there are no facts alleged that Singas was *personally* involved in the Investigation or prosecution of Plaintiff (*see* Complaint at Part IV ("Facts and Circumstances"), ¶¶1-4), which is what the law requires.  *See Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotations and citation omitted)); *see also Grullon v. City of New Haven,* 720 F.3d 133, 138–39 (2d Cir. 2013)("[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia,* the defendant's personal involvement in the alleged constitutional deprivation."); *Spavone v. N.Y.S. Dep't of Corr. Servs.,* 719 F.3d 127, 135 (2d Cir.2013) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quoting *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)(internal quotation marks omitted)).  Moreover, Plaintiff's time to have conducted Singa's deposition has expired, and Plaintiff never requested that this Court extend its discovery deadline to permit the taking of Singas' deposition.  (*See* Case Docket, *in toto*; *see also infra*, Part III(B)(1) (discussing expiration of discovery deadline in deciding Strike Motion).)

Further, Plaintiff's reliance on the Press Release to evince Singas' personal involvement in Plaintiff's arrest is unpersuasive.  The Press Release "is merely a statement issued jointly by her Office, the Nassau County Police Department[,] and the U.S. Drug Enforcement Administration, reflecting and commenting on an investigation conducted by those offices." (Reply at 5.)  Knowledge does not necessarily equate to personal involvement.  the Court agrees with the County Defendants that it "would be absurd" to find "that the issuance of a press release

by a District Attorney's office should be sufficient to bind the District Attorney herself to personal liability." (*Id.*) *Cf., Back v. Hastings on Hudson Union Free School District,* 365 F.3d 107, 127 (2d Cir.2004)("An individual cannot be held liable for damages under § 1983 'merely because [s]he held a high position of authority.'" (quoting *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996))); *see also Reid v. Nassau County Sheriff's Dep't,* No. 13-cv-1192, 2014 WL 4185195, at *12 (E.D.N.Y. Aug. 20, 2014)(same). Upon the record presented, including the Press Release, no reasonable juror could find that Singas was personally involved in the constitutional deprivations of which Plaintiff complains.

### (ii.) Donnelly and Smit

Since it is undisputed that the activities of both Donnelly and Smit were limited to prosecutorial functions (*see* D-Rule 56.1 Stmt., ¶¶56-58), each enjoys absolute immunity from Plaintiff's § 1983 claims. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (stating that prosecutors are entitled to absolute immunity from liability in § 1983 lawsuits were prosecutors' actions are "intimately associated with the judicial phase of the criminal process" (further citation omitted)); *see also Jackson v. County of Nassau*, No. 15-cv-7218, 2016 WL 1452394, at *6 (E.D.N.Y. Apr. 13, 2016) ("Under federal law, prosecutors enjoy absolute immunity from liability in suits seeking monetary damages for acts carried out in their prosecutorial capacities." (further citations omitted)). Plaintiff cannot defeat Donnelly's and Smit's entitlement to absolute immunity with his attempt to create a factual dispute "as to whether [Donnelly and Smit] exceeded their advocative functions as prosecutors" on the ground that he "has not yet had the opportunity to conduct depositions of [them]" (Opp'n at 5), because that argument is untimely. (*See supra* Part III(B)(2)(c)(i) (rejecting Plaintiff's "need to depose" argument regarding Singas); *see also infra*, Part III(B)(1) (discussing expiration of discovery deadline in deciding Strike

Motion ).)  Plaintiff's "Photo Array" argument (*see* Opp'n at 5) is equally unavailing since there is no evidence that either Donnelly or Smit were involved in their creations or use (*see* P-Rule 56.1 Stmt., ¶¶14-17 (cited by Plaintiff, Opp'n at 5)) and, in any event and contrary to Plaintiff's incorrect assertion, only the Third Photo Array was shown to Santiago to identify Plaintiff.  (*See supra* Part II(A)(2) (explaining that the First Photo Array was used to identify Moschetto and the Second Photo Array was used to identify Baialardo; *see also* D-Rule 56.1 Stmt., ¶¶23-24.) Finally, Plaintiff has failed to explain how Smit's subpoena of the Shelter Documents was anything other than conduct "intimately associated with the judicial phase of the criminal process."  *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012)(quoting *Imbler*, 424 U.S. at 430 (internal quotation marks omitted)); *Jackson*, 2016 WL 1452394, at *6.  Rather, such conduct is typical of a prosecutor preparing to initiate and pursue an indictment.  *See Jackson*, 2016 WL 1452394, at *6 (citing *Giraldo*, 694 F.3d at 165; *Robinson v. Via*, 821 F.2d 913, 918 (2d Cir. 1987)).  Finally, Plaintiff's reliance on the Shelter Documents is of no consequence to Donnelly's and Smit's invocation of absolute immunity.  Hence, upon the record presented, no reasonable jury could find any disputed fact that would preclude granting Donnelly and Smit absolute immunity from Plaintiff's § 1983 claims.

(<i>d</i>.)  <i>Plaintiff's Excessive Force Claim</i>

It is undisputed that Schiller was not involved in arresting and handcuffing Plaintiff.  (*See* D-Rule 56.1 Stmt., ¶39; *cf.*, P-Rule 56.1 Stmt., ¶ 28.)  Without personal involvement, he cannot be liable regarding Plaintiff's excessive force claim.  *See Raspardo v. Carlone*, 770 F.3d 97, 115, 116 (2d Cir. 2014)("If a defendant has not personally violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 claim against th[at] defendant. . . .  [Section] 1983 requires individual, personalized liability on the part of each governmental defendant."); *see also*

*Spavone*, 719 F.3d at 135 ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983" (quotations and citation omitted)).

As to Kaminski, the undisputed evidence is that he was one of two police personnel involved in the Plaintiff's arrest when he was handcuffed. (*See* D-Rule 56.1 Stmt., ¶40 ("Kaminski was present at the time of [Plaintiff]'s arrest, but did not place hands on [Plaintiff] or put him in handcuffs." (citing Kaminski Depo. Tr. (Ex B(D)), 40:8-12; Kaminski Decl. (ECF No. 39), ¶26).) Plaintiff claims that he testified "that he was arrested and placed in handcuffs by two officers, one being [] Kaminski and another 'short, heavy set, Spanish or Italian man.'" (P-Rule 56.1 Stmt., ¶23 (citing Plaintiff's Depo. Tr. (Ex. H(P)), 128:2-9.) However, Plaintiff's cited deposition testimony states:

> A. Two.
> Q. Do you know who they were?
> A. One of them was Mr. Kaminski, Detective Kaminski. The other one was – I don't know his name. Short, heavy set, Spanish or Italian man.
> Q. So, two officers, correct?
> A. Yes.
> Q. Just describe for us, if you can, that process of putting you into handcuffs.
> A. Just very uncomfortable. The handcuffs were very, very tight. * * *

(Plaintiff's Depo. Tr. (Ex. H(P)), 128:2-9.) Even viewing this evidence in the light most favorable to Plaintiff, he cannot maintain his excessive force claim against Kaminski based on his handcuffing, because he has proffered no medical evidence of injury caused by the tight handcuffs. Rather, the record evidence shows that Plaintiff suffered no injuries at the time of his arrest. (*See* Ex G(D) (NCPD "Physical Condition Questionnaire" (dated "04/14/2015-17:55"; signed by Plaintiff)); Ex. H(D) (NCPD "Physical Condition Questionnaire" (dated "04/14/2015-

19:10"; signed by Plaintiff)).)  To the extent "Plaintiff claims that he suffered injuries to his wrists as a result of the tight handcuffs[,] he admits that he never sought medical attention for those alleged injuries."  (D-Rule 56.1 Stmt., ¶ 43 (citing Plaintiff's Depo. Tr., 133:16-19).)  Nor, other than conjecture, has Plaintiff produced any evidence that the back injury he allegedly suffered was related to his handcuffing.  (*See, e.g.*, Plaintiff's Depo. Tr., 133:3-15 (testifying noticing back discomfort "about a month or two after being in custody").)  "Without medical evidence that these alleged injuries are related to being placed in overly tight handcuffs, [P]laintiff's bald assertion is simply incompetent to demonstrate a factual dispute that would preclude summary judgment."  (Reply at 8 (citing *Matthews v. City of N.Y.*, 889 F. Supp.2d 418, 443 (E.D.N.Y. 2012)(instructing "that in order to withstand summary judgment, [a plaintiff] must provide medical evidence that the handcuffs caused serious, long-lasting, or persistent injury"); *Esmont v. City of N.Y.*, 371 F. Supp. 202, 215 (E.D.N.Y. 2005).)  Hence, this is a "circumstance[]where the alleged unconstitutional act and injury [is] so *de minimis* that it cannot rise to a constitutional violation as a matter of law."  *Hodge*, 838 F. Supp.2d at 75-76 (collecting cases); *see also Ferebee v. City of N.Y.*, No. 15-cv-1868, 2017 WL 2930587, at *8 (S.D.N.Y. July 6, 2017)(explaining that a "*de minimis* injury can serve as conclusive evidence that *de minimis* force was used" (omitting further citations)); *Lemmo*, 2011 WL 843974, at *5 ("Injuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches with a cut inside the mouth." (internal citations omitted) (collecting cases))*; Sethi*, 2014 WL 2526620, at *5 (concluding, where plaintiff admitted to sustaining no injuries as a result of encounter with police officer that "as a matter of

law, such amount of force cannot be considered excessive" (internal quotation marks committed; collecting cases)).

(*e*.) *Plaintiff's Malicious Abuse of Process, False Arrest, and Malicious Prosecution Claims*

Plaintiff's malicious abuse of process, false arrest, and malicious prosecution claims are all premised upon his contention that there was a lack of probable cause to arrest him. (*See* Opp'n at 8-11.) In support of his position, Plaintiff points to: the Photo Arrays as faulty in identifying him as a suspect; the Shelter Documents as affirmatively establishing the impossibility of him being at the Fire Scene; the alleged unreliability of the Written Statements; and the inadmissible hearsay evidence regarding the "video confession of Defendant Baialardo, in which he stated that he alone set the [Fire]." (*Id.* at 9.) The Court views the proffered evidence differently.

First, the record shows that when presented with the Third Photo Array, the only photo array that included Kalamaras, Santiago positively identified him. (*See supra* Part II(A)(2) (explaining that the First Photo Array was used to identify Moschetto and the Second Photo Array was used to identify Baialardo; *see also* D-Rule 56.1 Stmt., ¶¶23-24.) Other than Plaintiff's conjecture, there is no evidence calling into question Santiago's veracity in making his positive identification of Plaintiff. Therefore, the Court finds no merit in Plaintiff's argument that Kaminski's failure to investigate Santiago negates Santiago's reliability as a witness.

Second, the Shelter Documents do not exonerate Plaintiff, as he contends they do, since a hearsay statement that Plaintiff planned to attend a meeting does not establish that as a fact, and a bed count record for a period of time covering from approximately midnight to 7:00 or 8:00 a.m. does not address the 8:00 p.m. time period when the Fire was set.

Third, the Court finds unpersuasive Plaintiff's argument that the Written Statements were "extremely unreliable" having been provided by individuals who "were cooperating with the District Attorney's Office in order to receive a lesser charge." (Opp'n at 11.) As the County Defendants highlight, Plaintiff "does not cite a single authority for the proposition that evidence obtained from a cooperating witness is inherently unreliable, or otherwise cannot be used to create probable cause to arrest where, as here, it is corroborated by independent evidence." (Reply at 10.) Indeed, as they argue "courts rely on statements from co-defendants and cooperating witnesses in conjunction with other evidence to support probable cause," citing *United States v. Kenny*, 883 F. Supp. 869, 884 (E.D.N.Y. 1995) by way of example. The *Kenny* court confirmed a magistrate judge's finding of probable cause for the issuance of a warrant where information in the supporting affidavit came from, *inter alia*, two cooperating witnesses and was otherwise corroborated. *See Kenney*, 883 F. Supp. at 884.

Fourth, the Court will not consider the video confession information since it is not presented in an admissible manner (*i.e*, by Plaintiff's deposition testimony regarding what he heard Baialardo state in that video). *See* Fed. R. Civ. P. 56(d); *Ceparano v. Suffolk County Dep't of Health*, No. 09-cv-558, 2013 WL 6328133, at *7 (E.D.N.Y. Dec. 4, 2013) (declining to consider inadmissible hearsay evidence when ruling on summary judgment motion) (collecting cases).

Contrary to Plaintiff's arguments, the Court finds that at the time of Plaintiff's arrest, the Detectives and Officers had reasonably trustworthy information to believe Plaintiff had committed a crime, thereby giving them probable cause to arrest him. *See Escalera*, 361 F.3d at 743. Accordingly, upon the record presented, Plaintiff cannot maintain his:

(i.) *malicious abuse of process claim*, because: to the extent the Detectives and Officers caused harm to Plaintiff by arresting him, they did so with excuse and justification; the existence of probable cause eviscerates Plaintiff's claimed inference of malice; and, Plaintiff has not presented any independent evidence of a "collateral objective" to his arrest, *see, e.g., Crawford*, 758 F.3d at 486 ("[W]here the nonmoving party will bear the burden of proof on an issue at trial, the moving party may satisfy its burden [of showing the absence of a genuine dispute as to any material fact] by pointing to an absence of evidence to support an essential element of the nonmoving party's case[.]" (quotations, alterations and citation omitted));

(ii.) *false arrest claim*, "[b]ecause[:] probable cause to arrest constitutes justification" for the arrest, *Escalera*, 361 F.3d at 743 (citing *Weyant*, 101 F.3d at 852), and is an absolute defense to such a claim; and, alternatively, at the very least the Detectives and Officers had arguable probable cause to believe Plaintiff had committed a crime, entitling them to qualified immunity from Plaintiff's false arrest claim, *see id.*; and

(iii.) *malicious prosecution claim*, because: "[l]ike a claim for false arrest, 'the existence of probable cause is a complete defense to a claim of malicious prosecution.'" *Fiedler*, 222 F. Supp.3d at162 (quoting *Savino*, 331 F.3d at 72); alternatively, where a grand jury returns an indictment, the indictment "creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith'" *Savino*, 331 F.3d at 72 (quoting *Colon v. City of N.Y.*, 60 N.Y.2d 78, 83 (1983)); it is undisputed that a grand jury returned an indictment against Plaintiff (*see* D-Rule 56.1 Stmt., ¶51); notwithstanding Plaintiff

moving twice to have the indictment dismissed (*see id.* at ¶¶52-53), his motions were denied;[15] and, Plaintiff has failed to present any evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith, which he must do to overcome the probable cause presumption.  *See Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004) ("The burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially.'" (quoting *Colon*, 60 N.Y.2d at 82)); *see also Savino*, 331 F.3d at 73 ("[I]t is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment." (further citation omitted)); *McClennon v. New York City*, No. 13-cv-128, 2018 WL 2943565, at *15 (E.D.N.Y. June 11, 2018)(same).

(*f.*)  *Plaintiff's Failure to Intervene Claim*

Plaintiff states that his "failure to intervene" claim "stems from the actions of [the Detectives] of arresting [him] based upon fabricated statements of . . . Baialardo and . . . Chlema," *i.e.*, the Written Statements.  (Opp'n at 12.)  In support of this claim, Plaintiff simply recites his lack of probable cause arguments that Santiago's Photo Array identifications and the Written Statements were not reliable and the Detectives' reliance on them, without further investigation, led to his arrest, which he contends was illegal.  (*See id.*; *cf.*, *e.g.*, Part III(B)(2)(e).)  As the County Defendants aptly characterize Plaintiff's argument, he is simply "implying that any statement provided by a cooperating witness is inherently false and reliance

---

[15]  After conducting an *in camera* inspection of the grand jury minutes, the state court denied Plaintiff's first motion to dismiss the indictment finding "that the evidence before the Grand Jury was legally sufficient to support the crimes charged."  (D-Rule 56.1 Stmt., ¶52.)  Plaintiff's second motion to dismiss the indictment, premised upon alleged *Brady* and other discovery violations, was denied in all respects.  (*See id.* at ¶53.)

upon same is tantamount to fraud." (Reply at 11 (further highlighting Plaintiff's failure to "cite a single legal authority to support this startling proposition"[16]).) However, Plaintiff has not presented any "evidence proving, or even suggesting, that [the Written Statements] were 'fabricated'." (*Id.*) The Court agrees. Given the totality of all the information available to the Detectives at the time of Plaintiff's arrest, a reasonable person in the Detectives' position would not have known that Plaintiff's constitutional rights were being violated by the arrest. Therefore, upon the present record, Plaintiff cannot sustain his "failure to intervene" claim.

(g.) *Plaintiff's* <u>Monell</u> *Claim*

The Plaintiff's *Monell* claim is based on a failure to train or supervise theory. (*See* Opp'n at 13.) In particular, Plaintiff faults the Detectives' investigation of the Fire, complaining of their: failure to investigate Santiago's background; use of the Photo Arrays; reliance on the Written Statements; and, skepticism of the Shelter Documents in exonerating Plaintiff. (*See id.* at 13-14.) He contends these complaints regarding the Detectives "provide a colorable claim for establishing a failure by policy makers to provide adequate training or supervision." (*Id.* at 14.) While this might have been sufficient in opposing to a dismissal motion, it fails to defeat the Summary Judgment Motion. As the County Defendants accurately reply, "Plaintiff has not introduced any evidence concerning the training by [the] County." (Reply at 12.) To make out a *Monell* claim based upon the County having inadequately trained or supervised its Detectives, the Plaintiff is "required to 'identify a specific deficiency in the [County's] training program and establish that [that] deficiency is 'closely related to the ultimate injury,' such that it 'actually

---

[16] Citing, by way of comparison, *United States v. Jimenez*, 654 F. App'x 815 (6th Cir. 2016), for the proposition that facts available to detectives at the time of a criminal defendant's arrest, including a cooperating witness who established herself as reasonably reliable and credible, were sufficient to establish probable cause.

caused' the constitutional deprivation." *White*, 2019 WL 1428438, at *4 (quoting *Amnesty Am.*, 361 F.3d at 129; further citation omitted)). Thus, in the absence of the requisite evidence, Plaintiff's *Monell* claim fails.

(*h.*) *Plaintiff's Conspiracy Claim*

Although Plaintiff asserts a conspiracy cause of action pursuant to § 1985 (*see* Complaint, Cause of Action X, at 20-22), he appears to abandon that argument and, instead, puts forth a conspiracy argument pursuant to § 1983. (*See* Opp'n at 14-15.) To prove a § 1983 conspiracy, a plaintiff must show: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002); *see also Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)(same). However, where all substantive § 1983 claims against named state actors have been dismissed, claims alleging participation in a civil rights conspiracy must also be dismissed. *See Singer*, 63 F.3d at 119 ("[T]he [conspiracy] lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right."); *see also Donofrio v. City of N.Y.*, 563 F. App'x 92, 94 (2d Cir. 2014) ("Because neither of the underlying section 1983 causes of action can be established, the claim for conspiracy also fails." (quoting *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009)). As Plaintiff cannot sustain his substantive § 1983 claims against the County Defendants, resulting in their dismissal, Plaintiff's conspiracy claim must also be dismissed as unsustainable. *See Young*, 160 F.3d at 904 ("There was no deprivation of a federal constitutional right, and therefore there can be no civil rights conspiracy to deprive that right."); *Singer*, 63 F.3d at 119; *Donofrio v. city of N.Y.*, 563 F. App'x 92, 94 (2d Cir. 2014)(holding that were the plaintiff's "substantive claims fail on the merits, his civil conspiracy claim must fail as

well" (further citation omitted)); s*ee also Scotto v. Almenas*, 143 F.3d 105, 115 (2d Cir. 1998)(denying § 1983 conspiracy claim where plaintiff failed to present any evidence "that anything untoward took place" between non-government defendants and defendant parole officer in attempt to chill plaintiff's exercise of his civil rights). Therefore, Plaintiff's § 1983 claim cannot stand.

* * *

The Court has considered the Plaintiffs' remaining arguments and finds them to be without merit.

IV.   <u>Conclusion</u>

Accordingly, IT IS HEREBY ORDERED that:

*A*.  Finding there is no basis to sanction the County Defendants, the Plaintiff's Strike Motion is DENIED;

*B*.  After drawing all inferences and resolving all ambiguities in favor of the Plaintiff, but finding that no rational jury could find in his favor, the Defendants' Summary Judgment Motion is GRANTED; all of Plaintiff's claims are dismissed as a matter of law; and

*C*.  The Clerk of Court is directed to enter judgment in favor of the County Defendants and, thereafter, close this case.

The October 10, 2019 Status Conference is marked off the Court's calendar.

SO ORDERED this 16th day of September 2019 at Central Islip, New York.

/s/ *Sandra J. Feuerstein*

Sandra J. Feuerstein
United States District Judge